

May 6, 2022

**Eric J. Berger**
Direct Phone   212-908-1279
Direct Fax        877-434-1068
eberger@cozen.com

*VIA ECF*

Hon. Ronnie Abrams
Thurgood Marshall United States Courthouse
40 Foley Square
New York, NY  10007

> **Re:**   *Jasmine Besiso and Myrone Powell v. Matt Barnes and DeMarcus Cousins*
> **Docket No.:  16-cv-9461**

Dear Judge Abrams:

This firm represents defendant Matt Barnes in the above-captioned matter. Counsel for defendant Matt Barnes ("Barnes") is in receipt of plaintiff Myrone Powell's Rule 26(a)(2)(b) Expert Exchange and report of neurologist Dr. Aric Hausknecht, both exchanged pursuant to Your Honor's order, dated January 6, 2022, permitting plaintiffs to retain a new neurologist after the passing of plaintiffs' predecessor neurologist Dr. Igor Stiler, and hereby request that Barnes be permitted to conduct a further physical examination of Mr. Powell in response/rebuttal to Dr. Hausknecht's report.

Dr. Hausknecht's report dated February 11, 2022 [see enclosed] summarizes an interview and examination that Dr. Hausknecht performed during February, 2022, and provides a guarded prognosis and statement of permanent condition, conclusions both made based on symptoms Mr. Powell has experienced for five years. Dr. Hausknecht further opines that Mr. Powell is partially disabled and in need of further treatment evaluation, and recommends repeat MRI of the cervical and lumbar spine, along with electrodiagnostic testing of the upper and lower extremities, which might form the basis for further interventional pain management and/or spinal surgery.

FRCP Rule 35(a) requires a party seeking a physical examination to show that the physical condition of the party sought to be examined is "in controversy" and must establish good cause for such an examination. *Schlagenhauf v. Holder*, 379 U.S. 104, 117-18 (1964); *Steinman v. Morton International, Inc*., 2015 WL 13830798 (W.D.N.Y. 2015). Rule 35(a)(2)(A) "does not limit the number of independent medical examinations that may be ordered so long as good cause is shown for each exam." *Steinman*, 2015 WL 13830798 at *2, *quoting Sadler v. Acker*, 263 F.R.D. 333, 336 (M.D. La. 2009). "[G]ood cause for ordering examination may be lacking if the party's mental or physical condition can be established by refer to a prior examination or other documentary evidence. However, <u>if the party to be examined has alleged an ongoing injury or illness, a prior examination probably will not provide an adequate basis for evaluating the party's condition.</u>" *Id.* (emphasis added). *See also Furlong v. Circle Line Statue of Liberty Ferry, Inc*., 902 F. Supp. 65 (S.D.N.Y. 1995) (A court may order multiple physical examinations, but a higher showing of cause is required to justify a subsequent examination). Further, "[i]t would be unfair to allow the

_____

plaintiffs' expert an opportunity to re-examine and re-test [plaintiff]…and not allow defendants' the same opportunity." *Steinman*, 2015 WL 13830798 at *2.

Here, there is more than ample good cause for a further neurological examination of Mr. Powell, based on the information contained in Dr. Hausknecht's report, which highlights his ongoing injury (*see Steinman, supra*), along with the need for continued testing and treatment. Dr. Hausknecht did not just provide an opinion based on Dr. Stiler's prior reports and other records. He conducted his own examination and provided a summary of Mr. Powell's ongoing condition up to the present, a prognosis, an opinion regarding permanency, and even went on to recommend further diagnostic testing that might lead to further significant treatment. All of these components of Dr. Hausknecht's report, along with the fact that neurologist Dr. Daniel Feuer, retained by co-defendant DeMarcus Cousins, examined Mr. Powell only once more than three-and-a-half years ago, on September 14, 2018, make a further neurological examination of Mr. Powell necessary to permit Barnes to properly defend Mr. Powell's damages case.

Conducting a further neurological examination of Mr. Powell will not prejudice him, whereas Barnes will be significantly prejudiced if he is not allowed to rebut newly-provided medical opinions by a new expert [after discovery has closed]. Although dispositive motions were filed, full briefings are still a while away, and the parties do not have a trial date. Counsel will retain a neurologist to examine Mr. Powell and conduct the further examination expeditiously, without any delay in any significant forthcoming events. As such, Barnes respectfully requests that he be permitted to conduct a further neurological examination of Mr. Powell.

In addition, counsel has not received a Dr. Hausknecht report for plaintiff Besiso, and should one be exchanged, Barnes requests that he be permitted a further neurological examination of her as well.

Respectfully submitted,

COZEN O'CONNOR

By:    Eric J. Berger

Enclosure

cc:    LAW OFFICES OF MICHAEL S. LAMONSOFF, PLLC
       Financial Square 32 Old Slip, 8th Floor
       New York, New York 10005

       WADE, CLARK & MULCAHY
       180 Maiden Lane, Ste 901
       New York, New York 10038

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------X

JASMINE BESISO AND MYRONE POWELL,

                    Plaintiffs,

-against-

MATT BARNES AND DEMARCUS COUNSINS,

                    Defendants

-------------------------------------------------------------------X

16-CV-9461

**PLAINTIFF'S RULE 26(a)(2)(b) EXPERT EXCHANGE**

      PLEASE TAKE NOTICE that Plaintiff, MYRON POWELL, by his attorneys THE LAW OFFICES OF MICHAEL S. LAMONSOFF, PLLC, pursuant to Federal Rule of Civil Procedure26(a)(2)(b), hereby exchanges the following physician, that Plaintiff may call as a witness at trial, who would testify about his opinions, formed during the course of examination and treatment of Plaintiff:

      Dr. Aric Hausknecht, M.D. American Board Psychiatry and Neurology and American Academy of Pain Management.

      Dr. Aric Hausknecht, M.D. is  expected to testify in accordance with his reports and records.

      More specifically, the subject matter of **Dr. Hausknecht's** testimony will be the treatment and examination of Plaintiff for physical injuries to his head, neck, and back. **Dr. Hausknecht** will testify as to the severity of Plaintiff's injuries and the effects that said injuries have on his functionality and livelihood. He will also testify as to his review of the medical records of other treating providers. **Dr. Hausknecht** will testify as to opinions, including but not limited to his opinion that Plaintiff's injuries were causally

related to his physical assault and as to the permanency of Plaintiff's injuries and restrictions on Plaintiff and his daily activities.

Dated: March 3, 2022
New York, New York

Yours, etc.,

*Jason Lesnevec*

JASON LESNEVEC, ESQ.
Law Offices of Michael S. Lamonsoff,
PLLCAttorneys for Plaintiffs
32 Old Slip, 8thFloor
New York, NY10005

CC:

MESITER SEELING AND FEIN, LLP
Attorneys for Defendant(s)
*MATT BARNES*
125 Park Avenue, 7th Floor
New York, New York 10017
(212) 655-3500

WADE, CLARK & MULCAHY
Attorneys for Defendant(s)
*DEMARCUS COUSINS*
180 Maiden Lane, Ste 901
New York, New York 10038
(212) 267-1900



# COMPLETE CARE

### COMPLETE MEDICAL CARE SERVICES OF NY, PC

RE: MYRONE POWELL (DOB: 11/10/81)          DATE: 02/11/22

<u>INITIAL NEUROLOGIC OFFICE VISIT– (New York Office)</u>

Dear Dr. Ford (Fax # 516-355-5011):

I have personally performed a comprehensive history and physical examination of this patient on the date above. All available records and diagnostic testing have been reviewed and I will review further records and diagnostic testing as they become available.

<u>HISTORY:</u> Mr. Powell is a right-handed man who sustained injuries on 12/05/16. On this date, he reports that he was assaulted and kicked and punched in the head and body and slammed to the ground. He hit his head but did not lose consciousness.

According to an FDNY EMS call report on 12/05/16, the patient complained that he was attacked inside a club and was hit several times in the face. He had swelling in both eyes and a swollen nose. He was transported to Northwell Linux Health Greenwich Village Emergency Room. According to the triage nurse, the patient had been punched in the face and fell to the ground. He had swelling on his forehead and the bridge of his nose. The emergency room physician noted that the patient had been punched and kicked in the head and face and slammed to the floor. There was associated loss of consciousness and he complained of headaches. On physical examination, there were multiple areas of swelling and contusion on the forehead and cheeks. CT scan of the head was performed. He was medicated and discharged.

According to a report by Dr. Stiler on 12/07/16, the patient complained of headaches and dizziness. He was having neck pain radiating into his shoulders and lower back pain radiating down his right leg. On examination, there was periorbital ecchymosis and tenderness. There was cervical tenderness and spasm with restricted range of motion. There was lumbar tenderness and spasm with restricted range of motion. There was motor weakness in the upper and lower extremities on the right. Dr. Stiler was impressed that the patient had posttraumatic headaches, cervical radiculopathy, and lumbar radiculopathy. He initiated the course of physical therapy and recommended orthopedic consultation. The patient was followed periodically between 12/07/16 and 07/09/18 by Dr. Stiler. According to a report dated 06/16/21, the patient had suffered posttraumatic headaches, cervical radiculopathy, and lumbar radiculopathy with multiple disc herniations. Dr. Stiler opined that his condition was closely related to the 12/05/16 assault and that his condition was permanent in nature with a poor prognosis for recovery.

COMPLETE CARE
19 EAST 37TH ST
NEW YORK, NY 10016
(212) 239-2112/ FAX 239-4224

NY MED
69-15 AUSTIN ST
FOREST HILLS, NY 11375
(718) 263-3500/ FAX 263-3565

COMPLETE CARE
2488 GRAND CONCOURSE, STE 310
BRONX, NY 10458
(718) 733-1050/ FAX 733-1025

Page 2
02/11/22
MYRONE POWELL

According to a report by Dr. Wald on 12/12/16, the patient had suffered head trauma and had periorbital ecchymosis and conjunctival hemorrhage. He was advised to follow up with a neurologist for head trauma.

According to a report by Dr. Grant on 12/15/16, the patient had been hit and kicked and was complaining of headaches, insomnia, shoulder pain, left arm weakness, right elbow pain, right hip pain, and left ankle pain. Dr Grant was impressed that the patient had maxillofacial injury. He recommended anti-inflammatory agents.

According to a report by Dr. Ford on 01/06/17, the patient had been receiving physical therapy. He complained of pain in his neck and lower back with radiation into his right leg associated with numbness and tingling. He was having problems lifting, carrying, bending, moving around, standing up, sitting, lying down, walking, and sleeping. On examination, there was cervical tenderness and spasm with restricted range of motion. Spurling test was positive on the right. There was lumbar tenderness and spasm with restricted range of motion. Straight leg raise testing was positive bilaterally. There was motor weakness in the left upper extremity with altered sensation in both upper extremities. There was motor weakness in both lower extremities with sensory abnormality in both lower extremities and a positive straight leg raise testing bilaterally. Dr. Ford recommended interventional pain management. The patient reports that he completed a series of cervical and lumbosacral epidural steroid injections. These gave him temporary symptomatic relief.

According to a report by Dr. Touliopoulos on 01/11/17, the patient had sustained multiple injuries. Dr. Touliopoulos was impressed that the patient had bilateral shoulder sprain, right elbow sprain, right hip trauma, left wrist sprain, and left ankle trauma. He recommended conservative management. The patient was followed periodically by Dr. Touliopoulos.

According to a report by Dr. Chiappetta on 01/11/17, the patient complained of radiating neck pain and radiating back pain. He was having difficulty standing. On examination, there was cervical tenderness and spasm with restricted range of motion. There was thoracolumbar tenderness and spasm with restricted range of motion. Straight leg raise testing was positive bilaterally. Dr. Chiappetta initiated a course of chiropractic treatments.

Mr. Powell reports that he had an episode of lower back pain last year. He indicates that he went for physical therapy. These records are not available for review.

On questioning today, the patient reports that he is having "good and bad days." He is still experiencing neck and back pain. Both of his hands have been feeling numb. Both of his legs have been feeling "tired." At times, his lower back tightens and locks up. He denies any motor or autonomic symptoms.

The patient has problems with his activities of daily living. He reports difficulty sitting, standing, bending, lifting, and walking.

The patient denies any headaches or dizziness. He denies any cognitive or psychological problems.

Page 3
02/11/22
MYRONE POWELL


PAST MEDICAL HISTORY:  He was involved in a prior motor vehicle accident in 2007.  He completed a course of treatment and made a full recovery.

PAST SURGICAL HISTORY:  Right hand, left shoulder.

REVIEW OF SYSTEMS:  The patient denies any signs or symptoms of COVID19 infection and infrared forehead temperature measured to be in < 100.4 Fahrenheit. Review of systems including general, skin, eyes, ENT, breast, cardiac, pulmonary, GI, GU and hematological is non-contributory.

MEDICATIONS:  None

ALLERGIES:  No known drug allergies.

FAMILY HISTORY:  Non-contributory.

OCCUPATIONAL/SOCIAL HISTORY:  The patient is an owner and operator of a catering company.  He has problems on the job especially if he has to participate in the setup which requires bending, lifting, and carrying.

PHYSICAL EXAMINATION:  Vital signs are within normal limits.  Examination of the pulmonary, cardiac, vascular, and gastrointestinal systems are unremarkable.

NEUROLOGICAL EXAMINATION

MENTAL STATUS:  Patient is alert and oriented.  Affect, mood and behavior is appropriate.  Short-term memory is intact.  Long-term memory is intact.   There is no evidence of expressive aphasia.  Repetition is intact.  There is no evidence of receptive aphasia.  Ability to process information and executive function is intact.

CRANIAL NERVES:  CNII-The pupils are equally reactive to light.  CNIII, IV, & VI-Extraocular movements are full.  There is no diplopia.  CNV-Facial sensation is intact.  CNVII- Muscular expression and movement of the face is within normal limits.  CNVIII-Hearing is grossly intact on both sides.  CNIX & X- Ability to swallow and movement of the palate is intact.  There is no dysarthria or dysphonia.  CNXI- Shoulder shrug is symmetric and intact.  CNXII- Strength and movement of the tongue is within normal limits.

MOTOR SYSTEM:  Motor strength testing reveals 4+/5 weakness in finger abductors of both hands.  Motor strength testing reveals 5-/5 weakness in both hip extensors.  The remainder of motor strength is intact in the upper and lower extremities and is graded as 5/5 in all myotomal groups tested.  Volume is within normal limits and there is no measurable atrophy.  Muscle tone is within normal limits in the extremities and there is no palpable spasticity.  There is no dysmetria or tremors present.

REFLEXES:  Deep tendon reflexes are tested by percussion utilizing a Queen Square

Page 4
02/11/22
MYRONE POWELL

neurological reflex hammer and graded on a scale of 0-4 in accordance with standardized procedures. The results are as follows:

| Reflex tested | Left | Right | Comment |
|---|---|---|---|
| Biceps | 2 | 2 | |
| Brachioradialis | 2 | 2 | |
| Triceps | 2 | 2 | |
| Patellar | 3 | 3 | |
| Achilles | 2 | 2 | |
| Plantar response | Flexor | Flexor | |

SENSORY: Light touch perception is within normal limits in the trunk and extremities.

MECHANICAL: There is cervical paravertebral and trapezius muscular tenderness. Spurling maneuver is positive bilaterally. There is lumbosacral paravertebral tenderness. Seated straight leg raise testing is positive on the right.

RANGE OF MOTION: ROM is objectively measured in the affected regions and joints using a hand held goniometer and wall mounted arthrodial protractor. Only affected areas have been examined. Both passive and active ROM is measured and any discrepancy is recorded in the comment section. A minimum of three trials is performed in order to assure an accurate, objective measurement. Loss of ROM is due to mechanical obstruction unless indicated in the comments. The results are as follows:

| BODY PART | MOVEMENT | OBSERVED ROM | NORMAL ROM* | COMMENT |
|---|---|---|---|---|
| C-spine | L lateral flexion | 0-30 | 0-50 | |
| C-spine | R lateral flexion | 0-35 | 0-50 | |
| C-spine | L rotation | 0-60 | 0-80 | |
| C-spine | R rotation | 0-65 | 0-80 | |
| C-spine | Forward flexion | 0-60 | 0-60 | |
| C-spine | Extension | 0-45 | 0-60 | |

| BODY PART | MOVEMENT | OBSERVED ROM | NORMAL ROM* | COMMENT |
|---|---|---|---|---|
| T/L-S spine | Forward flexion | 0-70 | 0-90 | |
| T/L-S spine | Extension | 0-15 | 0-25 | |
| T/L-S spine | L lateral flexion | 0-20 | 0-25 | |
| T/L-S spine | R lateral flexion | 0-20 | 0-25 | |
| T/L-S spine | L rotation | 0-30 | 0-30 | |

Page 5
02/11/22
MYRONE POWELL

| T/L-S spine | R rotation | 0-30 | 0-30 | |
|---|---|---|---|---|

*The normal ROM is based on published guidelines by the NYS Division of Disability Determination and the American Medical Association.
\

FUNCTIONAL EXAMINATION: The patient's gait and station are within normal limits.

NEUROPSYCHOLOGICAL TEST RESULTS:
Pain Disability Questionnaire (PDQ) 02/11/22 =40/150, indicative of mild-to-moderate functional and psychosocial impairment.

DIAGNOSTIC TEST RESULTS:
CT scan of the head 12/05/16 reveals superficial right periorbital soft tissue swelling.
MRI of the brain 12/07/16 is essentially normal.
MRI of the cervical spine 12/08/16 reveals C2-3, C3-4, C4-5 disc herniation, C5-6 disc bulge, and C6-7 disc herniation with right C7 nerve root impingement.
MRI of the lumbar spine 12/15/16 reveals L2-3, L3-4, and L4-5 disc bulges and L5-S1 disc herniation with associated S1 nerve root impingement.
NCV/EMG study of the upper extremities 03/02/17 reveals right C5 and left C6 radiculopathy.

IMPRESSION:
Closed head trauma.
Cervical derangement with C2-3, C3-4, C4-5 disc herniations, C5-6 disc bulge, C6-7 disc herniation with right C7 nerve root impingement and associated cervical radiculopathy.
Lumbosacral derangement with L2-3, L3-4, and L4-5 disc bulges and L5-S1 disc herniation with S1 nerve root impingement.

PLAN: Mr. Powell is a reliable historian. His injuries have been well documented. There is no other prior history of neck or back problems. With a reasonable degree of medical certainty, his condition is causally related to the injury sustained on 12/05/16.

Initially, the patient had symptoms consistent with postconcussion syndrome. At this point in time, he has no complaints referable to the head trauma.

Mr. Powell has been symptomatic for over five years. He has received an adequate course of treatment including rehabilitation and interventional pain management. Prognosis is guarded for any further recovery. With a reasonable degree of medical certainty, his condition is permanent in nature.

Mr. Powell has an abnormal evaluation including subjective complaints that are verified by the findings on physical exam. There is objective evidence of cervical and lumbosacral impairment including clinically significant restriction of mobility, positive Spurling's maneuver, and positive straight leg raise testing. The MR imaging reveals subjective evidence of structural pathology in the neck and back with associated neural impingement. The electrodiagnostic testing reveals objective evidence of nerve damage. With a reasonable degree of medical certainty, Mr. Powell has sustained permanent consequential limitation of use of his cervical and lumbosacral spine.

Page 6
02/11/22
MYRONE POWELL

The patient has persistent problems with his activities of daily living including sitting, standing, bending, lifting, and walking. These are expected medical consequences of neck and back injuries of this nature. With a reasonable degree of medical certainty, Mr. Powell has sustained significant limitation of function of his neurologic and musculoskeletal system.

He is partially disabled and I have advised him to restrict his activities. He is in need of further treatment evaluation and I have recommended repeat MR imaging of the cervical and lumbar spine as well as electrodiagnostic testing of the upper and lower extremities. On the basis of this information, further interventional pain management and/or spinal surgery may be required.

I, Aric Hausknecht, MD, being duly licensed to practice medicine in the State of New York, pursuant to the applicable provisions of the CPLR, hereby affirm under the penalty of perjury, that the statements contained herein are true and accurate.

Sincerely,

**Aric Hausknecht, MD**
Diplomate, American Board of Psychiatry and Neurology
Diplomate, American Academy of Pain Management

AH/st/sps

# ARIC HAUSKNECHT, MD



### EDUCATION AND TRAINING

**1993-1995** Neurologist and Assistant Neurologist, New York Hospital/Cornell Medical Center and and Memorial Sloane Kettering Cancer Center, New York, NY, and Hospital for Special Surgery, New York, NY

**1992-1993** Neurology Resident, Mount Sinai Medical Center, New York, NY

**1991-1992** Medical Intern, Beth Israel Medical Center, New York, NY

**1987-1991** MD, Mount Sinai School of Medicine, New York, NY

**1983-1987** BA, Physical Anthropology, Duke University, Durham, NC

BACK TO HOME PAGE

### EMPLOYMENT

**2000-Present** Neurologist and Pain Management Specialist, Complete Care. Practice includes providing treatment and evaluation in a community based clinic. Areas of expertise include pain management, rehabilitation medicine, and electrodiagnostic testing. Practice includes treatment and evaluation of orthopedic injuries and interpretation of radiological studies.

**1995-2000** Neurologist and Medical Director, Comprehensive Care Of New York. Position included the practice of neurology in a multispecialty group setting specializing in trauma and neuromuscular disorders.

**1993** Staff Physician, New York State Athletic Commission. Ringside doctor for boxing matches.

BACK TO HOME PAGE

### HOSPITAL PRIVILEGES

New York Hospital Queens, Flushing, NY

Beth Israel Medical Center, New York, NY.

BACK TO HOME PAGE

### CERTIFICATION

Diplomate, American Board of Psychiatry and Neurology, certificate no. 42832, April 1996

Diplomate, American Academy of Pain Management, certificate no. 6730, November 1996

BACK TO HOME PAGE

### LICENSING

Certified by the Drug Enforcement Administration, registration no. BH4452708

Qualified to practice medicine and surgery in the state of NY, license no. 190271

BACK TO HOME PAGE

### RESEARCH EXPERIENCE/TEACHING POSITIONS

**2001-Present** Adjunct Assistant Clinical Professor, Touro University College of Osteopathic Medicine.

**1989** NIH research fellowship, carpal tunnel syndrome secondary to amyloidosis in patients undergoing long-term hemodialysis.

**1988** NIH research fellowship, functional evaluation and radiographic findings in hemophilic arthropathy.

BACK TO HOME PAGE

### PROFESSIONAL AFFILIATIONS

American Academy of Neurology

American Academy of Pain Management

American Clinical Neurophysiology Society

Association for the Help of Retarded Children
National Multiple Sclerosis Society

BACK TO HOME PAGE

**OTHER**

Bilingual English/Spanish

BACK TO HOME PAGE

Complete Care

19 East 37th Street

New York, NY 10016

(212) 239-2112 / Fax (212) 239-4224

===========================================================

Dr. Aric Hausknecht, MD


Fee for court testimony $10 ,000 full day

Half a day $7,500