

May 9, 2022

**Eric J. Berger**
Direct Phone   212-908-1279
Direct Fax   877-434-1068
eberger@cozen.com

*VIA ECF*

Hon. Ronnie Abrams
Thurgood Marshall United States Courthouse
40 Foley Square
New York, NY  10007

   Re: *Jasmine Besiso and Myrone Powell v. Matt Barnes and DeMarcus Cousins*
     Docket No.:  16-cv-9461

Dear Judge Abrams:

This firm represents defendant Matt Barnes in the above-captioned matter. Counsel for defendant Matt Barnes ("Barnes") is in receipt of plaintiff Myrone Powell's letter in opposition to Barnes's request to conduct a further physical examination of Mr. Powell in response/rebuttal to Dr. Hausknecht's report.

Contrary to Plaintiff's argument, the request is not a "second bite at the apple." It is a legitimate request in response to a report that followed (1) a post-discovery order permitting plaintiffs to substitute a deceased neurologist and (2) a physical examination and subsequent report that did not simply re-state the deceased neurologist's opinions, but updated much of the history of Mr. Powell's physical condition, provided a prognosis, provided an opinion regarding permanency, and proposed new diagnostic testing that night lead to additional treatment. Respectfully, this is exactly the good cause that *Schlagenhauf v. Holder*, 379 U.S. 104, 117-18 (1964), *Steinman v. Morton International, Inc.*, 2015 WL 13830798 (W.D.N.Y. 2015), and *Furlong v. Circle Line Statue of Liberty Ferry, Inc.*, 902 F. Supp. 65 (S.D.N.Y. 1995) contemplate. "[I]f the party to be examined has alleged an ongoing injury or illness, a prior examination probably will not provide an adequate basis for evaluating the party's condition." *Steinman*, 2015 WL 13830798 at *2, *quoting Sadler v. Acker*, 263 F.R.D. 333, 336 (M.D. La. 2009). (emphasis added). Again, Rule 35(a)(2)(A) "does not limit the number of independent medical examinations that may be ordered so long as good cause is shown for each exam." *Steinman*, 2015 WL 13830798 at *2, *quoting Sadler v. Acker*, 263 F.R.D. 333, 336 (M.D. La. 2009). And, again, "[i]t would be unfair to allow the plaintiffs' expert an opportunity to re-examine and re-test [plaintiff]…and not allow defendants' the same opportunity." *Steinman*, 2015 WL 13830798 at *2.

My request on behalf of Barnes is not a "back door attempt to obtain a neurological exam of plaintiffs" that was not sought during discovery. And the fact that my predecessor counsel did not retain a neurological expert to examine plaintiffs is irrelevant to this request. [The intention was not to duplicate defendant Cousins's counsel's efforts and for defendants Barnes and Cousins to share the orthopedic and neurological experts at trial.] The Court permitted plaintiffs' counsel to retain a new neurologist to examine Mr. Powell [and Ms. Besiso] post-discovery and generate a

Hon. Ronnie Abrams
May 9, 2022
Page 2

_____

report and exchange a disclosure. Barnes's ensuing right to a further neurological examination of Mr. Powell [and Ms. Besiso], post-discovery, necessarily flows from the post-discovery disclosure and report exchanged by Mr. Powell's counsel. The cases above hold that the good cause is new and pertinent information regarding diagnosis, prognosis, causation and treatment that was not provided before, and after a significant period of time in the case has passed. As I stated in my opening letter from Friday, there is more than ample good cause for a further neurological examination of Mr. Powell, based on the information contained in Dr. Hausknecht's report, which highlights his ongoing injury (*see Steinman, supra*), along with the need for continued testing and treatment. Dr. Hausknecht conducted his own examination and provided a summary of Mr. Powell's ongoing condition up to the present, a prognosis, an opinion regarding permanency, and even went on to recommend further diagnostic testing that might lead to further significant treatment. All of these components of Dr. Hausknecht's report, along with the fact that neurologist Dr. Daniel Feuer, retained by co-defendant DeMarcus Cousins, examined Mr. Powell only once more than three-and-a-half years ago, on September 14, 2018, make a further neurological examination of Mr. Powell necessary to permit Barnes [and Powell] to properly defend Mr. Powell's damages case.

A further neurological examination would not re-open expert discovery. It would simply allow Barnes [and Cousins] to be on equal footing in their damages cases, pursuant to the above case law. A further neurological examination will not be an annoyance, embarrassment, oppression, or put an undue burden on Plaintiffs. To the contrary, conducting a further neurological examination of Mr. Powell [and Ms. Besiso] will not prejudice them, as full briefings of dispositive motions are still a while away and the parties do not have a trial date, whereas Barnes will be significantly prejudiced if he is not allowed to rebut newly-provided medical opinions by a new expert.

Respectfully submitted,

COZEN O'CONNOR

By:   Eric J. Berger

cc:   LAW OFFICES OF MICHAEL S. LAMONSOFF, PLLC
      Financial Square 32 Old Slip, 8th Floor
      New York, New York 10005

      WADE, CLARK & MULCAHY
      180 Maiden Lane, Ste 901
      New York, New York 10038